[Crim. No. 5523.   In Bank.   Mar. 1, 1954.]

THE PEOPLE, Respondent, v. CHARLES LEO McGARRY,
Appellant.

Ellery E. Cuff, Public Defender (Los Angeles) and Noel B. Martin, Deputy Public Defender, for Appellant.*

Edmund G. Brown, Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment of conviction of murder in the first degree, imposing the death penalty, and from an order denying a motion for a new trial. The homicide occurred on March 30, 1953.

The defendant is 65 years of age. His victim, Richard K. Gandy, was a member of the law firm which represented the defendant's wife in her successful action for separate maintenance. In that action, begun in 1948, an order was made requiring the defendant to pay certain sums in support of his wife and child, and for attorneys' fees. He refused to do so and a contempt proceeding was instituted against him in July, 1949. In an attempt to justify his refusal he contended that the marriage was invalid because his purported wife had not secured a divorce dissolving her marriage to a former spouse. He was found guilty of contempt and was committed to jail. After remaining there for 43 days he paid the support money in the sum of $450 and was released. He asserted that Mr. Gandy was instrumental in prolonging litigation in the separate maintenance suit and in hindering opportunities for reconciliation; that letters written to Gandy inquiring of the whereabouts of the defendant's child were unanswered; that he was "shaken down" for the $450 and that his wife got not "a dime of it." In October, 1951, he went to the office of the decedent and engaged in an argument with him over the case. There is evidence that the defendant made threats against the decedent at this time.

Several months prior to the homicide the defendant purchased a gun and ammunition for the purpose of shooting Gandy. On the morning of March 30, 1953, he deposited with the manager of the trailer court in which he lived an envelope containing the pink slip to his automobile for the stated reason that he didn't know whether he would be back. He left the

---

*Defendant chose to represent himself during the presentation of the prosecution's case. Thereafter, during the presentation of the defense and with his consent, he was represented by the Public Defender appointed by the court.

court about 9:30 a. m. with the loaded gun in his possession. When asked during the trial when it was that he had definitely made up his mind to shoot Gandy he answered: "... I just can't say when I did. I know definitely that morning when I went down to get Mr. Gandy I certainly had it on my mind that morning and I wasn't insane or anything like that." He testified that nothing unusual had happened to disturb him and that he hadn't seen or been in contact with Gandy since the scene in the latter's office almost a year and a half before. He went by bus directly to the attorney's offices and freely admits that when he entered the outer office it was his intention to shoot Mr. Gandy. He gave the name of "C. Deagen" to the secretary, fearing that Gandy would not see him if he gave his true name. He waited in the reception room reading a magazine until Mr. Gandy came in and passed through the room. Because he was not quite sure of the identity of his intended victim, whom he had seen only on his one previous visit to the offices, he inquired of the secretary if the man was Mr. Gandy, because he "wanted to be very sure." A few minutes later Mr. Gandy summoned the defendant into his inner office. In his own words the defendant testified: "I said, 'My name is not Deagen, it's McGarry'; and then I shot him." After the shooting the defendant walked to the outer office and twice asked that police be called. Mr. Gandy died that day from the effects of a single bullet wound near his heart. Although the defendant freely admitted an intention to shoot, he denied any intention to kill the decedent. He also testified that he "would have taken any one of five guys, just in order to get where I am right now, to get this thing in court."

From the evidence there is no question but that the killing was "wilful, deliberate, and premeditated" (Pen. Code, § 189), and that the jury was justified in determining it to be murder of the first degree. The defendant does not question this determination. He questions only the propriety of the sentence requiring the death penalty, and argues that the motion for a new trial was supported by such new evidence that if it were revealed on a second trial it would sufficiently impress the minds of the jurors to make a sentence of life imprisonment reasonably probable. He contends, therefore, that it was an abuse of discretion for the trial court not to grant the motion, and this is the only question on appeal.

The affidavit in support of the motion for a new trial recites the events taking place prior to and during the contempt proceedings and is highlighted by the defendant's bitterness

against those who he felt were responsible for what he considered to be the perpetration of fraud upon him and his frustration in his attempt to draw attention to his plight. The so-called newly discovered evidence consists of excerpts from the transcript in the contempt proceedings which indicate that the defendant there raised the question of the propriety of the support order he refused to obey. With reference thereto the judge presiding is claimed to have stated ''I am making an investigation before sentencing.'' The investigation referred to had been frequently mentioned during the course of the trial of the present case. The defendant's testimony that the judge had stated that he would investigate was corroborated by one witness. On the other hand a law partner of the decedent testified that no statement of this nature had been made, and his testimony was corroborated in rebuttal by the clerk of the court in which the contempt proceedings were conducted. The clerk further testified that he had refreshed his memory from the reporter's transcript in that proceeding. However, the transcript itself was not placed in evidence, although it was suggested by an alternate juror that excerpts be read therefrom.

Assuming the truth of the averments of the affidavit it is the defendant's theory of mitigation that with the additional evidence from the transcript in the contempt proceeding, he was justified to some extent in taking matters into his own hands to bring to light and rectify the injustice which he claimed had been done to him. The significance of the promised investigation was argued at the trial and the jury instructed that it ''was entirely free to act according to its own judgment'' in fixing the penalty at death or life imprisonment in the event that it found the killing to be murder of the first degree.

It is contended by the defendant that the evidence contained in the transcript was newly discovered; that it was corroborative and not merely cumulative and that it was unknown and unavailable to the defense on trial of the cause. No reason is stated why the transcript was not available during the trial, but it is claimed that the statement of the clerk who testified as to the content of the transcript on rebuttal came as a surprise and without adequate time for the defendant thereafter to put the transcript on record.

It has been repeatedly held that a motion for a new trial is addressed to the sound discretion of the trial court, and its action will not be disturbed except for a clear abuse

of discretion. (*People* v. *Sing Yow*, 145 Cal. 1, 4-5 [78 P. 235] ; *People* v. *Demasters*, 109 Cal. 607, 608 [42 P. 236].)

The elements of the standard by which a trial court in its discretion may properly grant a new trial on the ground of newly discovered evidence are set forth in *People* v. *Sutton*, 73 Cal. 243 [15 P. 86]. At page 247 it is stated that ''it must appear, —'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.' (1 Hayne on New Trial and Appeal, sec. 88.)'' More recent cases have turned on a lack of one or more of the foregoing requirements, but the over-all rules have withstood the test of time and properly state the existing law. (See *People* v. *Richard*, 101 Cal.App.2d 631, 635-636 [225 P.2d 938].)

It is convincingly argued that the evidence in support of the motion for a new trial is not newly discovered; that it is merely cumulative, that had the defendant exercised reasonable diligence he most certainly could have produced it at the trial; but consideration will be given to the merits of the defendant's claim that the so-called newly discovered evidence is of such significance as to make a recommendation of leniency reasonably probable on retrial.

It was sought throughout the trial and on this appeal to mitigate the character of the defendant's admitted crime on the basis of the facts as they appeared to him, and not on the facts as they actually existed. Thus he argues that there was implanted in his mind a firm conviction that he was the victim of a fraud and a conspiracy and that this dominated the whole course of his conduct leading up to and following the homicide. He cites the original proceedings in which his wife was successful in obtaining an order for separate maintenance against him; his unsuccessful efforts to obtain a determination that the marriage was not a valid one; his failure to learn from the deceased of the whereabouts of his child; the contempt proceedings for his failure to pay the support ordered because of his insistence that the marriage was void; his confinement in jail for 43 days in defiance of the determination that he was in contempt; his payment of $450 which he considered as a ''shake-down'' in order to get released from jail; a belief that the deceased and others had unjustly

and improperly deprived him of his property; his argument with the deceased previous to the attack resulting in death, and the fact that he believed an investigation had been promised but not made. The foregoing was considered during the trial. That the promised investigation was not an important factor in making up his mind that a wrong had been done him is indicated by the defendant's admission that he never actually knew whether it had been made and apparently he made no effort to ascertain the fact. Moreover there is nothing in the record or in the offer of the additional evidence to indicate that the judge had not in fact made the investigation before sentencing the defendant.

In ruling on the motion for a new trial the court could properly conclude that the offered evidence was available to the defendant during the trial by the exercise of reasonable diligence; that it was not newly discovered evidence in any true sense; that in any event it was of unimportant significance as against the mass of evidence already in the record bearing on the same theory of mitigation of punishment; that the same arguments were made on the motion for a new trial as had been made to the jury on the question of mitigation; that the evidence embodied in the offer was not even remotely connected with the actions of the defendant prior to the homicide, and that with the additional evidence there was no reasonable probability that a new jury would recommend life imprisonment. There was therefore no abuse of discretion in denying the motion for a new trial.

The judgment and order are affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.