Filed 7/31/14  P. v. Smith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN ROMMEL SMITH et al.,<br><br>    Defendants and Appellants. | D065632<br><br><br><br>(Super. Ct. No. RIF10003543) |

APPEALS from judgments of the Superior Court of Riverside County, Patrick F. Magers, Judge.  (Retired judge of the Riverside Sup. Ct.)  Affirmed.

David L. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant Brian Rommel Smith.

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant Clifford Lamore Brown.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Tami S. Falkenstein-Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Brian Rommel Smith and codefendant Clifford Lamore Brown (together defendants) of burglarizing an inhabited dwelling. It also found Brown guilty of grand theft and later found true prior conviction allegations as to Smith. The trial court found true prior conviction allegations as to Brown. The court sentenced Smith to 25 years to life in prison and Brown to 18 years in prison. Defendants appeal, contending (1) the prosecutor committed prejudicial misconduct, and (2) the trial court erred when it limited their cross-examination of a witness. We find no prejudicial error warranting reversal of the convictions and affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of May 25, 2010, Rito Meza and his wife went to the home of their daughter, Anri Karina Meza, in Perris, California so he could mow her lawn. As he arrived, Rito saw a tall black man, later identified as Smith, in front of the house. A thin black man with long, woven hair, later identified as Brown, pushed open the garage door from the inside. Smith backed a Toyota Camry into the garage and Brown put a television set into its trunk. Meza recognized the television as belonging to Anri.

Defendants drove away when Rito yelled at them to "get out of here." Rito called Anri, and Anri called the police. Rito followed the Camry, but ultimately lost it and returned to Anri's home. Police officers were waiting when he arrived. Rito gave police the license number of the Camry that his wife had written down. A crime analyst later discovered a Camry with a similar license plate number registered to Smith.

2

Anri told police that her television and stereo equipment were missing. Her home telephone and jewelry valued at between $3,000 and $5,000 were also missing. Anri met Smith a few years before the burglary through a mutual friend. The two developed a friendship and she called Smith frequently, but Anri claimed she was not interested in pursuing a romantic relationship with him because he had children with another woman. Anri recognized Brown as Smith's cousin, who had also visited her home. Smith claimed he was at work when the burglary occurred.

## DISCUSSION

### I. *Prosecutorial Misconduct*

A. General Legal Principles

Under California law, a prosecutor who uses deceptive or reprehensible methods to persuade a jury has committed misconduct, even if such action does not render the trial fundamentally unfair. (*People v. Frye* (1998) 18 Cal.4th 894, 969.) "To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]" (*Id*. at p. 970.) We do not look to isolated words or phrases, "we must view the statements in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) "[E]ven otherwise prejudicial prosecutorial argument[s], when

3

made within proper limits in rebuttal to arguments of defense counsel, do not constitute misconduct." (*People v. McDaniel* (1976) 16 Cal.3d 156, 177.)

## B. First Incident

### 1. Facts

Defendants both argued to the jury that Rito and Anri framed defendants for the burglary, claiming Anri was upset with Smith over their failed relationship. Smith's counsel argued to the jury that the case was filled with doubt, noting the following:

> "The prosecution could only produce one witness. Where's the neighbor? Where's the wife? The wife was with [Rito] the whole time. She saw, theoretically, the same thing. Nobody talked to her? Isn't that hard to believe? [¶] Rito . . . is the only person the district attorney could produce that claimed to have seen anything. He's the only one that would testify to this crazy story. Unfortunately we'll never know why Ms. Meza didn't testify. What about the neighbor?"

Smith's counsel later told the jury that the district attorney will state one witness is enough:

> "Why? Because of resources? One witness is enough? That's outrageous. And you'll see in the CALCRIM instruction, before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence. And all of the evidence is that there were at least two other eyewitnesses they didn't call."

During rebuttal argument, the prosecutor stated:

> "There's an instruction the judge [will] read to you, No. 300. Neither side is required to call all witnesses who may have information about the case or even to produce all physical evidence that might be relevant.
> "Also, testimony -- and we talked about it in jury selection. Testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence. Not all of the

4

speculation, not all of the opinions. You are not allowed to speculate. He wants you to. He just asked you to do something illegal."

Smith's counsel immediately objected, but the court overruled the objection commenting, "This is argument."

2. Analysis

Defendants contend the prosecutor committed misconduct by impugning the integrity of trial counsel when she told the jury that trial counsel was inviting them to "do something illegal." We disagree.

While we agree that use of the word "illegal" was a poor word choice, when the entire comment is considered in context, it does not appear to be a personal attack on the integrity of defense counsel. Immediately before the comment, the prosecutor told the jury they would be instructed that neither side was required to call all witnesses. In fact, the court later instructed the jury that "[n]either side is required to call all witnesses who may have information about the case or to produce all physical evidence that might be relevant." (CALCRIM No. 300.) Accordingly, the comment amounted to an attack on defense counsel's argument that it was "outrageous" for the prosecution to rely on the testimony of one witness and suggestion that the prosecution failed to prove its case because it did not present all possible eyewitnesses.

Moreover, any potential for prejudice was dissipated by the jury instructions, including the instructions that the attorneys' statements were not evidence (CALCRIM No. 222) and informing the jury of its duty to apply the law as instructed by the court even if the attorneys' comments on the law were believed to conflict. (CALCRIM No.

5

200)  We presume the jury followed these instructions as no contrary indication appears in the record.  (*People v. Gray* (2005) 37 Cal.4th 168, 217.)  Thus, there was no reasonable likelihood any juror would have applied the prosecutor's comment erroneously.  (*People v. Frye*, *supra*, 18 Cal.4th at p. 970.)

C.  Second Incident

1.  Facts

> "Don't forget, [Smith] has a motive to lie.  Out of anyone . . . here, he's the one on trial.  Why should you believe him?  He has no evidence to corroborate what he said.  None.
>
> "And then we come to this alibi defense of his, which is complete nonsense. . . .
>
> "Did he probably work at job sites?  Yeah.  Does he know what day he went to which job site?  No.  But you know who would is the company that he worked for.  He actually had to have proof of each and every job that he did.
>
> "Now, the defense doesn't have any burden at all to prove innocence. But they do have the power of subpoena, just like I do. And we know they know how to use their power of subpoena because we have these cell phone records.  We have no subpoenaed documents from [Smith's] work saying when he worked.  We have no subpoenaed documents saying here's a pay stub where I worked on May 25th, 2010. . . .
>
> ". . . You didn't hear from a defense witness that said, Oh, I work with [Smith], and he was there.  Oh, I'm his supervisor, and I know he was working.  No.  And you didn't hear any of that because none of it exists.  Because you better believe if it did, it would have been here."

Smith's counsel objected, stating, "There's no burden."  The court replied, "I agree.  At this point I'll sustain the objection."

2.  Analysis

Defendants assert the prosecutor's argument impermissibly shifted the burden of proof because it suggested they had the burden to produce evidence regarding their innocence.  Not so.

"The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence, to comment on failure to produce logical evidence, [and] to argue on the basis of inference from the evidence that a defense is fabricated." (*People v. Pinholster* (1992) 1 Cal.4th 865, 948.)  "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence."  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340.)

Here, the prosecutor did not impermissibly imply that defendants had the burden to produce evidence proving their innocence.  Rather, she permissibly commented on the state of the evidence; namely, that Smith presented no logical witnesses to support his alibi defense that he was working when the burglary occurred. There was no misconduct.  In any event, the trial court sustained the objection and later instructed the jury that defendants were presumed to be innocent and that the People were required to prove guilt beyond a reasonable doubt.  (CALCRIM No. 220.) Accordingly, there is no reasonable likelihood the jury would have misapplied the prosecutor's argument in the manner defendants contend.

7

II. *Cross-Examination of Rito*

A. Facts

Prior to trial, defendants informed the court they "believe[d]" Rito was committing a federal crime by being here illegally, but indicated they would research the issue. The trial court tentatively denied defendants' request to admit evidence of Rito's immigration status for impeachment. The court noted, however, that it would revisit the issue after being provided with some case law. Before Rito's testimony, defendants informed the court that they were unable to find any case law on point. The trial court denied defendants' request to present evidence of Rito's immigration status to impeach his testimony.

B. Analysis

Defendants assert the trial court's refusal to allow them to cross-examine Rito on his immigration status constituted prejudicial error because Rito was the prosecution's primary witness and illegal immigration status suggests dishonesty.

"In determining the credibility of a witness, the jury may consider any matter that has a tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to: a witness's character for honesty or veracity or their opposites; the existence or nonexistence of a bias, interest, or other motive; his attitude toward the action in which he testifies or toward the giving of testimony; and his admission of untruthfulness. [Citation.] Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal

proceeding is admissible to impeach, subject to the court's discretion under Evidence Code section 352." (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

A trial court has discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) This statute "empowers the trial judge to bar impeachment of a witness by reference to collateral matter." (*People v. Blackburn* (1976) 56 Cal.App.3d 685, 693.) We will not disturb a court's exercise of its discretion to exclude the evidence "'*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 828.) Application of the ordinary rules of evidence does not impair a defendant's constitutional right to present a defense. (*People v. Boyette* (2002) 29 Cal.4th 381, 427-428.) Although completely excluding evidence of an accused's defense theoretically could infringe on his right to present a defense, excluding defense evidence on a minor or subsidiary point does not. (*Ibid.*)

As a preliminary matter, the parties have not provided us with any published case law establishing that illegal immigration *is* a crime of moral turpitude and we have not found any case law on this issue. Rather, our high court recently decided that the presence of an undocumented immigrant in the United States without lawful authorization "does not itself involve moral turpitude." (*In re Garcia* (2014) 58 Cal.4th 440, 460.) As the *Garcia* court explained, "'investigation into the

9

circumstances surrounding the commission of the act must reveal some independent act beyond the bare fact of a criminal conviction to show that the act demonstrates moral unfitness.'" (*Ibid.*)

Putting this issue aside, defendants assert Rito was an illegal immigrant; however, they cited absolutely nothing in the record supporting this assertion. At most, Rito alluded to an immigration status issue when he testified that a defense investigator left him a document stating he needed to bring immigration documents, noting he was unsure if the person was trying to "scare" him. Accordingly, on this record, we need not address whether the illegal immigration status of a witness is admissible for impeachment. Rather, assuming without deciding that such evidence is admissible for impeachment, we conclude defendants failed to demonstrate prejudicial error in excluding this line of questioning because defendants had no way to prove or disprove any answer Rito provided.

Moreover, assuming Rito testified that he entered the country illegally, further questioning would have been required to determine the reasons for his entry, the nature of his entry and whether it involved some sort of deception. (See generally, Miller, *Crossing Over: Why Attorneys (and Judges) Should Not Be Able to Cross-Examine Witnesses Regarding Their Immigration Statuses for Impeachment Purposes* (2010) 104 Nw. U. L. Rev. Colloquy 290, 291 [arguing that under federal law, immigration status does not directly bear upon dishonesty, and even if it did, the probative value of immigration interrogation was substantially outweighed by the danger of unfair prejudice that it introduced].) In light of the possible confusion of issues and undue

10

consumption of time, we cannot find that the court abused its discretion in excluding any evidence regarding Rito's immigration status.

DISPOSITION

The judgments are affirmed.


McINTYRE, J.

WE CONCUR:

McDONALD, Acting P. J.

IRION, J.