**Kenneth Lee HOUSTON, Petitioner,**

v.

**Louis S. NELSON, Respondent.**

**No. CV 74–2633–DWW(T).**

United States District Court,
C. D. California.

Dec. 4, 1975.

Stephen K. Abbott, Abbott & Pinkus, Mill Valley, Cal., Michael Nasatir, Beverly Hills, Cal., for petitioner.

Evelle J. Younger, Atty. Gen. of Cal., Jack R. Winkler, Chief Asst. Atty. Gen., Crim. Div., S. Clark Moore, Asst. Atty. Gen., Norman H. Sokolow, Andrew D. Amerson, Deputy Attys. Gen., Los Angeles, Cal., for respondent.

**1110**

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

DAVID W. WILLIAMS, District Judge.

Petitioner was charged with kidnapping, felon in possession of a firearm, and two counts of extortion in an information filed in the Superior Court of Los Angeles County, California. The extortion counts were subsequently dropped. Following a jury trial, he was found guilty of kidnapping for ransom and unlawful possession of a firearm and sentenced to concurrent terms in state prison.

The conviction was affirmed by the California Court of Appeal and a petition for hearing before the California Supreme Court was denied. Petitioner then filed this petition in the U. S. District Court for the Northern District of California, and it was transferred to this district for disposition.

I conclude that the application for discharge from custody by way of a Writ of Habeas Corpus must be denied. Petitioner has failed to demonstrate that he is in custody in violation of the Constitution or laws or treaties of the United States as required by 28 U.S.C. § 2254.

### FACTS

Houston began living with a 15 year-old runaway girl. Together they contrived a plan to kidnap the girl's 9 year-old brother and hold him for $10,000 ransom, an amount the girl knew her mother to possess. Pursuant to this plan, the couple drove in petitioner's vehicle to a place a few blocks from the victim's home and waited, knowing that he would pass that place on his way to school. As the victim walked near the petitioner's vehicle, the runaway sister enticed the boy into the vehicle and the three departed for a hotel.

At 10 A.M. that same morning, the boy's mother received the first of four phone calls from the kidnapper advising that he had her son and wanted $10,000 for his return. Other calls were received around 6 P.M., 7 P.M. and 8 P.M. The police were present during the last three calls and monitored them. The 8 o'clock call told the mother to take the money to the Greyhound Bus Terminal in Hollywood and leave it in a trash can in the women's restroom. Upon the advice of the police, the mother did so. The Los Angeles Police Department "staked out" the pickup point with plain clothes police officers.

Petitioner and the 15 year old girl arrived at the bus station in petitioner's vehicle. The girl went inside the restroom but became frightened by the presence of a woman, whom she believed to be an undercover policewoman. She ran out of the station, pursued by officers, and jumped into petitioner's vehicle which departed at a high rate of speed. Petitioner was heard yelling at the girl to hurry and get in. Officers opened fire on the fleeing vehicle blowing the rear window out.

Police units pursued the couple and after a high speed chase covering several miles, the petitioner's vehicle crashed and the couple was arrested. The girl told the arresting officer "We should have killed the little motherfucker." (T. 331).

The girl took the police to the hotel where she and the petitioner had left the boy, and he was returned to his mother unharmed.

Petitioner raises five issues which I consolidate into three for discussion.

1. Whether the identification of petitioner's voice violated his constitutional rights to counsel and due process?

2. Whether petitioner had an constitutional right to represent himself pro se?

3. Whether petitioner received ineffective assistance of counsel?

## IDENTIFICATION OF PETITIONER'S VOICE

### A. *Wade-Gilbert Problem*

The victim's mother who had spoken with the kidnapper on the telephone, was subpoenaed to appear in court for a preliminary hearing concerning petitioner. Petitioner's name was on the subpoena. When the mother arrived, one of the investigating officers greeted her in the hallway and told her that they had the man who was arrested with her daughter. He asked her to sit up front in the courtroom and to listen to the voices to determine if she recognized the kidnapper's voice. The mother's identification of the petitioner's voice at his trial was based solely upon her observations and perceptions at the preliminary hearing.

This identification proceeding took place without petitioner's knowledge and without presence of counsel.[1] The comparison was made when the petitioner's case was called and he was speaking directly to the court. From this observation, the mother identified the petitioner as the kidnapper although she later stated that she could have picked his voice out of several others if asked to do so. This procedure was requested by defense counsel but denied by the court.

 Houston contends that under the rationale of the *Wade-Gilbert* Rule, he was entitled to presence of counsel and notice that an identification procedure was taking place at the preliminary hearing. His reliance on *Wade* and *Gilbert* is misplaced.

The Supreme Court in *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, (1967) held that:

". . . a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967).

In the case at bar the identification procedure was held during a preliminary hearing and as such is a critical stage of the criminal prosecution. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

The procedure utilized in this case, however, is distinguishable from the traditional lineup type cases. Here there was no evidence that the appearance of the mother at the hearing was for the sole purpose of identifying the petitioner. Rather, this was a preliminary hearing during which it could be expected that many, if not all, of the witnesses to the crime would appear. Included among those witnesses were the mother of the victim and the police officer who had been in her home on the day of the kidnapping. Both had heard the voice of the kidnapper and it can be assumed that both would listen closely to the voice of the man who would be called that day in court.

The situation is not one which was meant to be subject to *Wade-Gilbert* principles. This was not a formal lineup proceeding called for the purpose of identifying the petitioner. Rather, the mother had been subpoenaed to give testimony at a preliminary hearing. She testified that although a police officer told her to sit in the front of the court and listen to the voices, she intended to do so anyway. Had the police officer not talked with her prior to the proceedings, this problem would not have arisen for there would have been no

---

1. Petitioner appeared at this hearing *in propria persona;* however, he had not yet formally waived the assistance of counsel.

taint of a possible lineup procedure being used.

Yet here, a police officer did offer a certain degree of encouragement to the mother's identification. While this contact may raise the possibility of a due process violation, it does not change the proceeding from a preliminary hearing to a lineup, thus invoking the protection of *Wade-Gilbert*. The mother had a right and duty to be in the courtroom at that time and the voice comparison which she would make in her mind was not equivalent to a lineup. There is no indication from the record that either the prosecution or the police department intended the proceeding to substitute as a lineup. The indiscretion of one police officer, an man untrained in the subtleties of *Wade-Gilbert,* is what raises the specter of petitioner's claims under *Wade* and *Gilbert*.

### B. *Due Process Problem*

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court dealt with a situation where the *Wade-Gilbert* right to counsel did not apply. There the court held that although the petitioner was not entitled to the benefits of *Wade-Gilbert,* where the confrontation conducted was unnecessarily suggestive and conducive to irreparable mistaken identification, then there was a denial of due process. The court stated that "(T)his is a recognized ground of attack upon a conviction independent of any right to counsel claim." (P. 302, 87 S.Ct. at p. 1972). The question therefore is whether the mother's voice identification was the result of a highly suggestive atmosphere. On cross-examination the mother described her conversation in the courtroom hallway with the officer as follows:

Q Now, were you told by anyone or requested by anyone, "Listen carefully to the person who spoke, that is to say, Mr. Houston, to see if you could recognize the voice"?

A Yes.

Q And who was that person?

A Officer Dickey.

Q What did he say, exactly, to you in connection with that subject?

A He told me to listen to see if it was the same voice or not.

Q Did he say who to listen to?

A He said the gentleman would be in court.

Q And was this before or after he told you that this was the same gentleman that had picked up with your daughter Ruth?

A Yes.

Q And he also told you that this gentleman, the same gentleman, would be in court and you were to listen closely to his voice to see if you could recognize it; is that correct?

A Yes. (PHT 103–105)

"The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." (*Stovall* at 302, 87 S.Ct. at 1972). "It is the likelihood of misidentification which violates a defendant's right to due process, . . .. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■ I find that the situation in which the mother was placed at the preliminary hearing to be one which was unnecessarily suggestive and which consequently violated petitioner's rights to due process of law.

### C. *Harmless Error*

The next question is whether the violation of petitioner's rights to due process were of such a magnitude as to compel a granting of his petition or was it harmless error?

■ "(B)efore a federal constitutional error can be held harmless, the

court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Such a determination involves looking at the entire record. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The record in this case indicates that the admission into evidence of the mother's identification of the petitioner's voice was harmless error.

Out of the four phone calls placed by the kidnapper to the mother's home, the police were privy to three. Officer Dickey, who was in the mother's home the day of the crime, listened to the voice of the kidnapper during the 6:00, 7:00 and 8:00 o'clock calls. He later made a voice comparison between those calls and the voice of the petitioner and found them to be one and the same (T. 199). No objection was raised to the officer's identification.

Furthermore, the victim boy testified not only that it was the petitioner and his sister with whom he spent that day but that he was with petitioner when he made the 7:00 o'clock call[2] to the mother. Thus two witnesses, independent of the mother, identified the petitioner as making the ransom calls. Cumulative evidence is therefore presented identifying petitioner as the person making three of the four calls. Beyond this there was strong circumstantial evidence which substantiates a guilty verdict. Witnesses living with the petitioner testified to his comings and goings and also as to he and the girl bringing the victim to the motel where they all were staying. Furthermore, there was the arrival of the petitioner at the bus station, his rapid departure while yelling at the girl to hurry and get into the car; all amidst the shouts of police officers who sought to detain the couple. Finally, the pursuit of petitioner's vehicle at high speeds which ended in a crash, gives a strong indication supporting petitioner's guilt.

The identification of petitioner's voice by the mother, while violating his right to due process of law, was evidence which was harmless beyond a reasonable doubt and which therefore will not provide a basis for the grant of this petition.

## PETITIONER'S RIGHT TO REPRESENT HIMSELF

At various times throughout Houston's preliminary hearings and before and during trial, he requested that he be allowed to proceed in pro se (T. 3–5).

On June 30th of this year, the Supreme Court decided *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, (1975) which held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. Since petitioner has raised the same issue, two problems arise which merit discussion:

A. The state of the law prior to *Faretta.*

B. The retroactivity of *Faretta.*

Petitioner contends that under either theory his petition should be granted.

### A. *Pre-Faretta Law*

The Ninth Circuit as early as 1969 had dealt definitively with the right to defend pro se where, in an appeal from a federal criminal case it held:

"A defendant in a criminal case not only has a constitutional right to the assistance of counsel, he has a correlative constitutional right to refuse the advice or interference of counsel and to present his own case. A court has no more right to force an attorney on a defendant than it has to ignore the Sixth Amendment right to counsel." *Arnold v. U. S.,* 414 F.2d 1056, 1058, (9 Cir. 1969).

---

2. During the 6:00 o'clock call the mother had asked to speak to the boy. The kidnapper refused but said that she could speak to him when he called at 7:00 o'clock. At 7:00 o'clock she did talk to him.

Again in 1973, this Circuit in *U. S. v. Price,* 474 F.2d 1223, (9 Cir. 1973) affirmed this principle when a panel stated "(i)ndeed, it is now clear that the right to proceed pro se is not merely statutory, it is a right of constitutional dimension." (P. 1226). Further, it held that "(s)ince the right to proceed pro se is bottomed on the Constitution, the defendant need not show prejudice in order to secure reversal of a conviction." (P. 1227). The implication of the last statement is obvious. If Ninth Circuit law applies to petitioner's case, then denial of his request to defend pro se is an automatic ground for reversal barring any argument of harmless error.

As the law of this Circuit was developing in the manner described above, the California courts were holding the opposite. The cardinal case for the California position was *People v. Sharp,* 7 Cal.3d 448, 103 Cal.Rptr. 233, 499 P.2d 489, (1972) wherein the California Supreme Court held:

> "It is apparent, of course, that constitutional language granting the right to the assistance of counsel lends no express support to a claim that an accused has the constitutional right to defend without counsel. Nor can due process requirements, in the sense that what justice seeks to achieve is a fair trial, be construed as demanding that an accused be entitled to defend without counsel merely because he is of a mind to do so. This is not to say that the right to counsel, like other constitutional rights, may not be waived in a proper case. Moreover, the Sixth Amendment guarantees only 'assistance,' and does not expressly purport to 'force a lawyer upon a defendant.' (citations) Nevertheless, the right to waive a constitutional protection is not itself necessarily a right of constitutional dimensions."
> (*Sharp* at 455, 103 Cal.Rptr. at 237, 499 P.2d at 493).

Thus, the California Supreme Court refused to hold that the right to defend pro se is of constitutional dimensions in state prosecutions, a position contrary to that which the Ninth Circuit had held to be true in federal prosecutions.

The petitioner contends that the case of *Meeks v. Craven,* 482 F.2d 465 (9 Cir. 1973) brought these divergent authorities together and applied the Ninth Circuit constitutional standard to state criminal proceedings. *Meeks* was a petitioner in state custody who filed a § 2254 habeas corpus petition in the federal court. This was the first time this Circuit had reviewed the state standard. All of the previous cases cited dealt solely with prosecutions in federal courts. Petitioner's reading of *Meeks* convinces him that a defendant in a state criminal proceeding has the same constitutional right to defend pro se as does a defendant in a federal criminal proceeding. I do not agree.

In my opinion, *Meeks* does not confront the issue whether the federal standard shall apply to state prosecutions. The Court in that case held that "(t)his circuit has recognized a constitutional right to represent ones self, (citations) and has recently stated that the complete denial of this right in a *federal trial* is, per se, reversible error." (*Meeks* at 466 (emphasis added)). However, the court failed to pass on the constitutionality of the standard employed in California state trials for the determination of pro se status. The court stated:

> "*Meeks* contends that the standard used in California to pass on demands to proceed pro se is constitutionally invalid because it requires that the defendant possess some actual ability to present a defense. *We do not reach this question,* for we hold that *Meeks* did not make an 'unequivocal' demand to represent himself. (*Meeks* at 467 (emphasis added)).

Thus, as I read *Meeks,* the court did not pass on the sufficiency of California's standard. Rather they moved on to the question whether Mr. Meeks did or did not make an unequivocal demand

to represent himself. By implication then, the circuit court had left room for California to have its own standard for determination whether to allow a defendant to proceed pro se or not. In fact, the *Meeks* court cites *People v. Sharp* (7 Cal.3d p. 467, 103 Cal.Rptr. 233, 499 P.2d 489) and makes no negative comments about it.

■ I find that prior to *Faretta v. California, supra,* there existed two separate lines of authority, one federal and one state, which applied differing standards to defendants who sought to represent themselves in person. Petitioner was tried in state court and I believe that the standard of *People v. Sharp* should apply. Nothing in Ninth Circuit law directly applies the federal standard of *Arnold* and *Price* to prosecutions in state court. Prior to *Faretta,* petitioner had no constitutional right to proceed in his own defense pro se.

### B. *Retroactivity*

There is no indication in *Faretta* whether its rule it to be applied retroactively. Therefore, we must turn to the general rules to make a determination. In *Stovall v. Denno (supra)* the Supreme Court held that in determining whether to apply a ruling retroactively, the court must take into account:

> "(a) The purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards and (c) the effect on the administration of justice of a retroactive application of the new standards." (388 U.S., p. 297, 87 S.Ct. p. 1970).

■ The result reached in *Faretta* is to allow a defendant to conduct his own defense as he sees fit unfettered by an attorney he does not want. The reliance by the authorities in California on the old standard was not unauthorized, since the highest court in the state had passed on the issue. The effect on the administration of justice could be traumatic. Any defendant who at one time requested to represent himself on the record in a state court criminal proceeding could file for a new trial and under the rationale of *U. S. v. Price, supra,* no prejudice need be shown, only an unequivocal demand.

Beyond these must be the consideration of whether the denial of the right to proceed pro se denied a fair trial. Absent a showing of ineffective assistance of counsel, the petitioner was given a fair trial with proper representation. There is no need to apply the *Faretta* rule retroactively where a fair trial has already been provided by the standards in effect prior to *Faretta.*

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner's final contention is that he received ineffective assistance from his appointed counsel. The two grounds cited by the petitioner for this claim are (1) the counsel's failure to seek suppression of the evidence seized after petitioner's arrest in the search of his vehicle, and (2) the failure of counsel to challenge a juror who related his revulsion to the crime of kidnapping during voir dire.

"The standard to be applied to sustain such (a) contention is that the inadequacy must have been such that the trial was a farce or a mockery of justice, or so ineffective as to shock the conscience of the court." *U. S. v. Steed,* 465 F.2d 1310, 1317 (9th Cir. 1972). "(O)ne is not denied the right to the effective assistance of counsel simply because in the after light it appears that some argument might have been taken which might have produced a different result." *Kreiling v. Field,* 431 F.2d 502, 504 (9th Cir. 1970).

The record indicates that when the petitioner's vehicle was seized, the arresting officers had probable cause to believe that the vehicle had been used in the commission of a crime. Under the general rule of *Chambers v. Ma-*

*roney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) the search was valid and the evidence admissible. While it is true that additional facts may have surfaced in a suppression hearing, such conjecture cannot be used to substantiate petitioner's claim of ineffective assistance of counsel.

The second reason giving rise to petitioner's claim is that his counsel should have challenged one of the jurors for his bias. During voir dire one juror stated:

> "Probably I ought to state that I have a particularly strong feeling against the crime of kidnapping; it elicits a very deep revulsion within me when I hear about a thing like this." (Supp.T.A.–124)

Taking into consideration the standard for judging ineffective assistance of counsel mentioned above, defense counsel's decision not to challenge this juror might well be viewed as a part of his trial strategy. This is true especially in light of the juror's further comment:

> "I'd say I would try to do my best to give the fair response from the evidence which comes up in the trial. I don't know, like you say, what my final verdict would be; would be either possibly swayed by my deep feelings on the subject or possibly, be a compensation for them." (Supp. T.A.–125)

Furthermore, the juror went on to give the judge additional assurances of his intent to give the defendant a fair trial.

Neither objection raised by petitioner supports a conclusion of incompetency on the part of his counsel and thus the claim of ineffective assistance of counsel is without merit.

Petitioner Kenneth Lee Houston's petition for a writ of habeas corpus must be denied, there having been no showing of a violation of Houston's rights which compels his release from state custody.