Frederick J. X. MARTIN, Appellee,

v.

Donald W. WYRICK, Appellant.

No. 77–1625.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1977.

Decided Jan. 3, 1978.

Rehearing Denied Jan. 28, 1978.

Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., for appellant; John D. Ashcroft, Atty. Gen., on brief.

Ronald Hall, Asst. Federal Public Defender, Kansas City, Mo., for appellee; David R. Freeman, Kansas City, Mo., on brief.

Frederick J. X. Martin pro se.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), decided June 30, 1975, the Supreme Court held that a defendant has a constitutional right of self-representation in the conduct of his or her own defense in a criminal case. The Court declared that a defendant could not be forced to accept court-appointed counsel if a knowing and voluntary waiver of counsel has been made. Frederick Martin here maintains that the district court's order granting him habeas corpus relief properly accorded *Faretta* a limited retroactive effect by applying the new constitutional interpretation to his case which was pending

on direct appeal before the Missouri Court of Appeals at the time *Faretta* was decided. The respondent Warden appeals.

The petitioner was convicted for robbery in the Missouri state court. Both before and during his trial Martin had requested that his court-appointed counsel be dismissed and that, if the court would not appoint substitute counsel or allow him to hire his own counsel, he be allowed to represent himself. The state trial court, however, denied these requests. Seven days after the *Faretta* decision was announced, the Missouri Court of Appeals affirmed petitioner's conviction without discussion of the issue of self-representation which had been raised in petitioner's pro se brief. Martin thereafter attempted without success to have the Missouri Supreme Court review his conviction. He then sought habeas corpus relief in the federal district court for the Western District of Missouri. On May 27, 1977, the district court granted a writ of habeas corpus to petitioner requiring the Missouri courts to apply *Faretta* to his case, the effect of which was to grant petitioner a new trial in the state court.[1] We reverse and hold that the district court erroneously granted the writ.

■ The applicability of a new constitutional interpretation[2] to cases pending on direct review at the time the new rule was handed down was addressed by this court in *Bosler v. Swenson*, 363 F.2d 154 (8th Cir. 1966), *aff'd per curiam without discussion of the retroactivity issue*, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967). In *Bosler* we held that the right to counsel on appeal declared in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963),

required Bosler be provided with counsel on his direct appeal to the Missouri Supreme Court since Bosler's appeal had been pending before that court at the time *Douglas* was decided. 363 F.2d at 158.

The district court felt bound under the rationale of *Bosler* to apply the *Faretta* rule to petitioner's case since Martin's appeal to the Missouri Court of Appeals was pending at the time *Faretta* was decided. In *Bosler* we said:

> An analysis of the Supreme Court opinions dealing with prospective or retroactive applicability of constitutional decisions points unmistakably to the proposition that the *Douglas* rule must be applied to cases pending on direct review at the time it was rendered.

> In *Linkletter v. Walker*, the Court held that the exclusionary rule announced in *Mapp v. Ohio* does not apply to convictions which had become final before its rendition. However, as the Court observed in *Linkletter*, "that decision [*Mapp*] has also been applied to cases still pending on direct review at the time it was rendered." . . .

> As recent as June 20, 1966 the Supreme Court held in *Johnson v. New Jersey* that *Escobedo v. State of Illinois* and *Miranda v. Arizona* are not to be applied retroactively. More specifically, the Court held that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of the *Escobedo* decision, and that *Miranda* applies only to those cases in which the trial began after it was decided on June 13, 1966. Of greater significance to the question before us is the Court's statement on page 732 of 384

1. Martin's first effort to obtain federal habeas corpus relief was dismissed by the district court on the grounds that he had failed to exhaust his state remedies. Petitioner thereafter sought post-conviction relief in both the Missouri Court of Appeals and the Supreme Court of Missouri. The state, however, still maintains that the petitioner has failed to exhaust his remedies in the state court by not filing a motion to vacate the trial court's judgment. We assume without deciding that petitioner has properly exhausted available state remedies. *See Wilwording v. Swenson*, 404 U.S.

249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Eaton v. Wyrick*, 528 F.2d 477, 480 (8th Cir. 1975).

2. The issue of retroactivity is presented only when the rule established by a case breaks with past precedent; that is, when a "new" rule is proclaimed. *See Desist v. United States*, 394 U.S. 244, 247–48, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). *See also* Note, *Application of the "New Rule" Threshold Test Before Determining the Retroactivity of Almeida-Sanchez*, 53 Tex.L.Rev. 586 (1975).

U.S., on page 1780 of 86 S.Ct.: "Decisions prior to *Linkletter* and *Tehan* [*Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 409, 15 L.Ed.2d 453 . . . ] had already established without discussion that *Mapp* and *Griffin* [*Griffin v. State of California* . . . ] applied to cases still on direct appeal at the time they were announced. . . . "

From the foregoing we conclude that *Douglas* does apply and therefore controls this case. Bosler's direct appeal from the conviction had not been decided and was still pending when the *Douglas* decision was announced.

363 F.2d at 158 (citations omitted).

Although a reasonable interpretation of the *Bosler* decision is that retroactive effect must be given to all new constitutional interpretations involving criminal rights pending appeal at the time the new rule is announced, upon reconsideration we conclude the Supreme Court decisions on this issue require a different analysis.

In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court held that the new rule pronounced in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), applying the Fourth Amendment rules pertaining to search and seizure to state trials, and overriding the 12 year old precedent established in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), would not be made retroactive to cases which had reached final judgment.[3] Thus, the Court broke with a long tradition which had held new *constitutional* decisions to be retroactive. In discussing the retroactive application of new constitutional rules involving criminal rights the Court explained:

While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-estab-

lished common-law rules, there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application. It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, "We think the Federal Constitution has no voice upon the subject."

381 U.S. at 628–29, 85 S.Ct. at 1737 (footnotes omitted).

A further adjustment to the Court's approach to retroactivity came in *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The Court there held that the rules established in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would be available *only* to persons whose trial began after the date those decisions were handed down. Although the Court did not discuss at length its reason for not applying *Escobedo* or *Miranda* to cases pending on direct review, the Court did point out that:

Our holdings in *Linkletter* and *Tehan* were necessarily limited to convictions which had become final by the time *Mapp* and *Griffin* were rendered. Decisions prior to *Linkletter* and *Tehan* had already established without discussion that *Mapp* and *Griffin* applied to cases still on direct appeal at the time they were announced. On the other hand, apart from the appli-

---

**3.** Although the precise issue of whether *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be applied to cases pending on direct appeal was not before the Court in *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court in *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), and later in

*Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), had previously recognized the principle that if a change in statutory or decisional law occurred after trial but before the final appellate disposition of a case the newly enunciated law will govern the case.

cation of the holdings in *Escobedo* and *Miranda* to the parties before the Court in those cases, *the possibility of applying the decisions only prospectively is yet an open issue.*

384 U.S. at 732, 86 S.Ct. at 1780 (emphasis added) (citations omitted).

The rule enunciated in *Johnson*, contrary to the implication in *Bosler*, suggested that the question of retroactivity, regardless of whether the court was reviewing a decision on direct appeal, was to be decided on an individual case basis. 384 U.S. at 733, 86 S.Ct. 1772.

■ Subsequently in *Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), any uncertainty as to what the Supreme Court intended was removed. *Williams*, which was decided after *Bosler*, held the rule announced in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), inapplicable to cases pending on direct appeal. The Court, citing *Johnson v. New Jersey, supra*, observed:

> In *Linkletter v. Walker* we declined to give complete retroactive effect to the exclusionary rule of *Mapp v. Ohio*. Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be

ignored. Since that time, we have held to the course that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights. *Nor have we accepted as a dividing line the suggested distinction between cases on direct review and those arising on collateral attack.* Rather we have proceeded to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."

> .  .  .  .  .

> Both from the course of decision since *Linkletter* and from what has been said in this opinion, it should be clear that we find no constitutional difference between the applicability of *Chimel* to those prior convictions that are here on direct appeal and those involving collateral proceedings. Nor in constitutional terms is there any difference between state and federal prisoners insofar as retroactive application to their cases is concerned.

401 U.S. at 651–52, 656, 91 S.Ct. at 1151 (emphasis added) (citations omitted) (footnotes omitted).[4] *See also Gosa v. Mayden*,

---

4. The rules of retroactivity are not applicable in a narrow area where a substantive criminal law has been changed by a new constitutional rule. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). One author has explained the impact of *Robinson* as follows:

In *Robinson v. Neil* Justice Rehnquist wrote a majority opinion holding *Waller v. Florida*, a double jeopardy case, fully retroactive. Speaking for the first time on the issue, he neither fully embraced nor wholly rejected the Court's non-retroactivity doctrine as it had evolved. While taking note of the criteria established in *Linkletter* and succeeding cases, he asserted that the instant case did not "readily [lend] itself to the analysis established in *Linkletter*. Certainly there is nothing in *Linkletter* or those cases following it to indicate that all rules and constitutional interpretations arising under the first eight amendments must be subjected to the analysis there enunciated." Those decisions, he said, all concerned "procedural rights and methods of conducting trials," and he concluded that their standard "is simply not appro-

priate" for "some non-procedural guarantees." *Furman v. Georgia* was cited as an example. Justice Rehnquist then applied his thesis to the case at bar:

The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial.

Conceding that the distinction was not "an iron-clad one that will invariably result in the easy classification of cases in one category or the other," Justice Rehnquist determined that the jurisdictional character of the right at issue in *Robinson* plainly warranted retroactive application.

How significant is the apparent break from the *Linkletter* rationale in *Robinson v. Neil*? Less important, it is suggested, than at first blush it might appear. The exception was

413 U.S. 665, 675–76, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Chapman v. United States*, 547 F.2d 1240, 1246 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977).

■ We therefore conclude that application of the per se rule of retroactivity in cases pending on direct appeal suggested in *Bosler* is not correct. Regardless of whether a case is pending on direct appeal at the time a new decision is decided or whether it comes to us on collateral attack, federal courts are directed to apply the Supreme Court's criteria in making the retroactivity decision.

The criteria for determining whether a decision should be applied retroactively are set out in *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*See also Michigan v. Payne*, 412 U.S. 47, 51, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973).

■ The California Supreme Court in *People v. McDaniel*, 16 Cal.3d 156, 127 Cal. Rptr. 467, 545 P.2d 843 (en banc), *cert. denied*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976), a unanimous decision, after applying the *Stovall* criteria, held that *Faretta* should not be applied retroactively even to cases pending on direct appeal.

In its consideration of the first criterion for retroactivity, the California Supreme Court stated:

probably implicit in the non-retroactivity doctrine from the beginning. "Substantive" rights protected by the Constitution which have continuing legal significance over a period of time—so that a retroactivity/prospectivity issue is even pertinent—would seem rare. And when a change in the law pertaining to such a substantive right happens at a time when the new rule can affect an as yet unsettled matter (as in the double jeopardy area), then retroactivity follows a fortiori. Actually, this is not in

[W]e discover that it is readily apparent that the purpose of the rule is to secure to an accused the personal freedom to choose how and by whom he will defend against a criminal charge. It is manifest from those portions of the *Faretta* opinion quoted above that compliance with the rule is not intended by the majority of the court in *Faretta* to enhance the reliability of the truth-determining or fact-finding process, as the majority anticipate and indeed concede, that such compliance will most likely have the directly opposite effect. When implementation of the new rules does not in some significant degree aid in the truth-determining process, little or no weight is added to the balance in favor of retroactive application as little or no prejudice in the trial itself is suffered by an accused whose guilt was determined without benefit of the new rule.

*Id.* at 473, 545 P.2d at 849.

We agree with the California Supreme Court's analysis. Since the purpose of the new rule is the paramount consideration in the *Stovall* test, *see United States v. Peltier*, 422 U.S. 531, 535–39, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Williams v. United States, supra*, 401 U.S. at 653, 91 S.Ct. 1148; Rossum, *New Rights and Old Wrongs: The Supreme Court and the Problem of Retroactivity*, 23 Emory L.J. 381, 398 (1974), the determination that the purpose underlying *Faretta* was not to enhance the fact-finding process strongly suggests the rule should not be made retroactive.

The second criterion, justifiable reliance on past practices, also favors, though not strongly, non-retroactivity since Missouri practice had long recognized the decision to allow self-representation was within the

any proper sense retroactive application, for the matter remains open and unsettled; it is simply a choice of law question, and, where substantive constitutional rights are concerned, the sensible approach is to apply the current law. Of course, as Justice Rehnquist suggested, there will be cases that defy easy categorization. . .
Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal*, 61 Va.L.Rev. 1557, 1585–86 (1975) (footnotes omitted).

discretion of the trial court.[5] However, since only the few cases where direct review is pending would be affected by a decision applying *Faretta* retroactively, the second *Stovall* criterion does not significantly influence the outcome of this case.

Lastly, the California Supreme Court accurately noted in *McDaniel* that:

> The final criterion, the effect of retroactive application of the *Faretta* rule upon the administration of justice, surely swings the scales heavily against retroactive application. Such application could require that convicted persons who unsuccessfully sought at trial to assert a right of self-representation be accorded a new trial wherein they might appear *pro se.*

127 Cal.Rptr. at 474, 545 P.2d at 850. Given the foregoing analysis, we agree with the California Supreme Court that the *Faretta* rule should be applied only prospectively in those cases wherein the accused sought to assert the right of self-representation in a trial commenced after June 30, 1975, the date the *Faretta* decision was filed. *See People v. McDaniel, supra* at 474, 545 P.2d at 850. *See also Houston v. Nelson,* 404 F.Supp. 1108, 1115 (C.D.Cal.1975).

We therefore reverse the order of the district court granting the conditional writ of habeas corpus. The cause is remanded to the district court with directions to enter an order denying petitioner's claim and dismissing his petition.

---

**5.** *See* Mallamud, *Prospective Limitation and the Rights of the Accused,* 56 Iowa L.Rev. 321, 357 (1970).