**Paul Manning WALKER,
Petitioner-Appellant,**

v.

**O. A. LOGGINS, Superintendent,
Respondent-Appellee.**

**No. 77–3603.**

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1979.

Rehearing Denied June 12, 1979.

Dennis Roberts (argued), Oakland, Cal., for petitioner-appellant.

Ramon M. de la Guardia (argued), Sacramento, Cal., for respondent-appellee.

Before BROWNING, CARTER and ANDERSON, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's denial of Paul Manning Walker's petition for habeas corpus relief from a California conviction. Walker makes two arguments: (1) his conviction for both manslaughter and assault with a deadly weapon for the same act violated his Fifth Amendment right not to be twice placed in jeopardy; and (2) the trial court's denial of his request to represent himself violated his constitutional right to self-representation under the Sixth Amendment.

Walker's first contention is without merit. The recent decision of another panel in *Bittaker v. Enomoto*, 587 F.2d 400 (9th Cir. 1978), requires that we vacate and remand for reconsideration of Walker's claim of denial of his right to self-representation.

## I. FACTS

On August 8, 1974, appellant Walker was convicted by a jury in the Superior Court of the State of California for the County of Solano of voluntary manslaughter, assault with a deadly weapon, three counts of selling cocaine, and one count of conspiracy to sell cocaine. He had shot and killed an undercover narcotics agent during a bungled narcotics bust. The trial judge merged Walker's sentences for manslaughter and assault with a deadly weapon and ran them consecutive to the drug conviction sentences.

On appeal to the California Court of Appeal, First Appellate District, Division Three, the conviction was affirmed on all counts. However, while California law permits a defendant to be *convicted* of both manslaughter and assault with a deadly weapon for the same act, it does not permit *punishment* for both offenses. The California Court of Appeal noted that "[t]he usual procedure in such situations is to leave standing the sentence for the most serious offense of which the defendant was convicted. While manslaughter is more serious from the standpoint of the consequences to the victim, the legislature has imposed the greater penalty for the offense of assault with a deadly weapon." *People v. Walker,* 1 Crim. 13861 (1976) (Unpublished). Therefore, Walker's sentence was modified to stay the execution of his manslaughter sentence pending service of the assault sentence, the stay to become permanent upon completion of the assault sentence. *People v. Walker, supra.*

On March 28, 1977, Walker filed a petition for habeas corpus in the United States District Court, Northern District of California. The petition was transferred to the United States District Court, Eastern District of California. Walker raised, *inter alia,* the self-representation and the double jeopardy issues, but both were decided against him by the district court. Counsel for Walker filed a petition for reconsidera-

tion which failed to convince the district court to grant his petition, but did convince the court that a justiciable question exists regarding the petitioner's self-representation claim. Accordingly the district court issued Walker a certificate of probable cause to appeal, as required by 28 U.S.C. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure.

## II. DOUBLE JEOPARDY

Walker contends his conviction of both assault with a deadly weapon and voluntary manslaughter arising from the same act committed against the same person constitutes double jeopardy. Allegedly, if an indictment for murder names the weapon used, then the evidence needed to prove the murder charge (or any lesser included offense such as manslaughter, as here) is identical to that needed to prove assault with a deadly weapon. This arguably makes the assault itself a lesser included offense of the murder charge.[1]

Where the same act constitutes a violation of two distinct statutory provisions, the test laid down in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), for determining whether there are two offenses or only one is "whether each provision requires proof of an additional fact which the other does not." *See Gore v. United States,* 357 U.S. 386, 388–93, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Kearney,* 560 F.2d 1358, 1366 (9th Cir. 1977), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). *Cf. United States v. Raborn,* 575 F.2d 688 (9th Cir. 1978); *United States v. Stolarz,* 550 F.2d 488, 491 (9th Cir. 1977), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977); *Olais-Castro v. United States,* 416 F.2d 1155, 1157 (9th Cir. 1969).

[redacted] The application of this test focuses on the statutory elements of the offense charged, not the particular manner in which the offense was committed or described in the indictment.[2] *Iannelli v. United States,* 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Thus, it is irrelevant that the use of a pistol was charged in Walker's indictment for murder. *See generally People v. Wilson,* 62 Cal.App.3d 370, 132 Cal.Rptr. 813 (1976).

Here neither murder nor manslaughter need be committed with a deadly weapon, as is required in the assault charge. And the death of a human being is not an element of assault with a deadly weapon, as it is in the murder or manslaughter charge. Under *federal* law Walker constitutionally could have been convicted and sentenced for both offenses. Therefore, there is no error in California's more lenient rule which permits a defendant to be convicted for two distinct offenses arising out of the same act, but prohibits punishment for both offenses.

## III. SELF-REPRESENTATION

[redacted] On January 16, 1974, at his state trial, Walker made the following unsuccessful request to represent himself:

1. The state sentenced Walker only on the assault conviction. By his double jeopardy argument Walker is seeking to vacate the assault conviction, which would require that he serve only the lesser sentence for manslaughter.

2. In *Iannelli,* the Supreme Court explained:

> The test articulated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether separate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain "whether each provision requires proof of a fact which the other does not." *Id.,* at 304, 52 S.Ct. at 152. As *Blockburger* and other decisions applying its principle reveal, see, *e. g., Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *American Tobacco Co. v. United States,* 328 U.S. 781, 788–789, 66 S.Ct. 1125, 1128–1129, 90 L.Ed. 1575 (1946), the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Iannelli v. United States,* 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293–1294, 43 L.Ed.2d 616 (1975).

DEFENDANT WALKER: I would like to have it noted that I do not recognize this person as my attorney.

THE COURT: All right. Let the record so indicate.

\* \* \* \* \* \*

DEFENDANT WALKER: I'd like to represent myself—

THE COURT: Well—

DEFENDANT WALKER: —is what I'm saying.

THE COURT: The court is not going to allow you to defend yourself. It is going to appoint the Public Defender to represent you.

At the time of this request, the Supreme Court had not ruled definitively whether state defendants have a Sixth Amendment right to represent themselves. That question was answered in the affirmative in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The State contends that it was under no obligation prior to *Faretta* to permit defendants to represent themselves, and that its refusal to do so at Walker's trial cannot provide a basis for habeas relief.

The recent decision in *Bittaker v. Enomoto*, 587 F.2d 400 (9th Cir. 1978), is controlling. As the court said:

[T]he law of this circuit at the time of [defendant's] state court trial [1974] had already been established in a fashion consistent with the Supreme Court's statement of the law in *Faretta. Arnold v. United States*, 414 F.2d 1056, 1058 (9th Cir. 1969), *cert. denied*, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970); *Bayless v. United States*, 381 F.2d 67, 71 (9th Cir. 1967). This circuit had stated in federal cases that self-representation was a corollary of the Sixth Amendment right to counsel. Because the defendant could waive his Sixth Amendment right, we said he could also insist on self-representation as a constitutional, as well as a statutory, right. Until now, we have had no occasion to apply the federal constitutional right to state habeas petitioners.

. . .

There can be little doubt, however, that, if squarely faced with the issue, we would have applied the right to self-representation to a state habeas petitioner. *Id.*, at 401–402. Thus, under the law of this circuit when Walker was tried, Walker had a federal constitutional right to represent himself. Denial of that right would entitle him to habeas relief.

The record does not clearly show, however, whether Walker's right to represent himself was in fact denied. We have only a partial excerpt from the transcript of the proceedings in state court. We cannot be sure that the whole record will establish that Walker's demand for self-representation was sufficiently "unequivocal" to trigger constitutional protection, *see Meeks v. Craven*, 482 F.2d 465, 467 (9th Cir. 1973).

We therefore vacate the judgment denying Walker's habeas petition and remand to the district court for full consideration of the self-representation claim.

REMANDED.

JAMES M. CARTER, Circuit Judge, dissenting:

One of my colleagues responded to a proposed opinion in another case as follows: "The burden [of preparing a dissent] overcomes my outrage [at the holding of the opinion]. I concur."

Although I have let this case simmer for a considerable time, I cannot say I concur.

The dissent is directed to the failure of my colleagues to ask for an en banc but instead merely following *Bittaker v. Enomoto* (9 Cir. 1978), 587 F.2d 400.

The following material is submitted in an attempt to demonstrate that the decisions in *Bittaker v. Enomoto, supra,* and in this case, which follows *Bittaker,* are not compelled by precedent; and to show that the panels could have chosen other alternatives for a contrary holding.

The cases held that a state prisoner who had been denied the right to represent himself by a state court before the Supreme Court decided *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 on

June 30, 1975, has a constitutional right of self-representation and is entitled to relief by habeas corpus in the federal courts.

*Bittaker* did not consider the impact of its decision on cases in the state courts when, before *Faretta,* defendants had been denied the right of self-representation. In footnote 2 the panel states it was improper for the state to call attention to the case of Charles Manson. We discuss this footnote later herein.

### The Effect of the Decision

The effect of *Bittaker* and *Walker v. Loggins,* the present case, will be most unfortunate. In recent years, in many cases, the trial courts of California have refused to let a defendant represent himself and have appointed counsel for him. The events in the present case began with the shooting of the undercover agent on December 5, 1972. Many of these other cases in the California courts will have arisen even before that date. The rule of *Bittaker v. Enomoto, supra,* and the present case, will result in either a jail deliverance of defendants in this category or new trials without counsel present for the defendant, a most difficult situation for a trial judge. The absurdity of the whole situation rests on a series of elements:

(1) The Supreme Court of the United States in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), for the first time determined that defendants in state prosecutions had a constitutional right of self-representation. For 200 years no Supreme Court case had ever so held.

(2) Attorneys had been appointed for those defendants in state cases where the right to proceed without counsel had been denied them. As a practical matter those defendants were far more adequately represented in their trials than they would have been, had the state courts allowed them to proceed without counsel. This is a case where, although a constitutional right was declared in favor of the defendant, the failure to accord him that right as a practical matter, in almost all the cases, had not hurt or injured him in any way.

(3) Before the *Faretta* case in the U.S. Supreme Court, the California courts had denied that such a right existed for a defendant in their courts. *People v. Sharp,* 7 Cal.3d 448, 103 Cal.Rptr. 233, 499 P.2d 489 (1973), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 610.

(4) After *Faretta,* the California Supreme Court construed the *Faretta* rule as one to be applied prospectively only in those cases where the accused had sought to represent himself in trials that commenced on or after June 30, 1975, the date of the U.S. Supreme Court decision in *Faretta. People v. McDaniel,* 16 Cal.3d 156, 158, 127 Cal. Rptr. 467, 545 P.2d 843 (1976).

Faced with the effect that our decision will have on state court cases, there were various ways in which our court could have treated the problem without bringing about the unfortunate results referred to. If we had reversed the grant of habeas corpus below, instead of affirming, our decision could in no way affect cases *thereafter* arising in the state courts, since *Faretta* would obviously control. Our decision at best could only affect cases arising and decided in the state courts *before Faretta.*

Such alternatives were as follows:

1. Yield to and follow state law.

2. Hold that *Faretta* was based on a different constitutional basis than our Ninth Circuit opinions and that we need not follow our prior cases based on different premises.

3. We could have required a showing of prejudice to a defendant and limited our decision to cases decided in California *before Faretta.*

4. We could and should have considered the effect of our decision on state law enforcement, a factor ignored in footnote 2 in *Bittaker.*

5. We could have held, as proposed in my first draft of the present case, that our cases had never upheld the right of self-representation in a state criminal case, and our prior cases did not command we do so.

1. *We should yield to the state law.*

We apparently only pay lip service to the principle that we should interfere in state criminal matters to as limited a degree as possible through a policy of fostering federal-state comity. *Gonzales v. Stone* (9 Cir. 1976), 546 F.2d 807, 810. We could therefore have stated that although our cases prior to *Faretta* had held that there was a right to self-representation in federal cases, nevertheless we could have acknowledged and yielded to the California rule as stated in *People v. Sharp, supra,* which denied the right of self-representation to a defendant prior to *Faretta,* and we could have declined to inflict our decision on the California courts.

This could be a solid ground for a reversal. True, there would be one rule in federal cases and another in state cases. But there would be the clear recognition we were not going to undermine the California position.

2. *Faretta in the U.S. Supreme Court was based upon a principle different from our prior decisions in the Ninth Circuit.*

The Supreme Court in *Faretta* had held that the right to self-representation was implied in the structure of the Sixth Amendment. 422 U.S. at 817, 95 S.Ct. 2525, et seq. *Faretta* expressly rejected self-representation as stemming from a correlative right—the right to have an attorney. 422 U.S. at 819–820, 95 S.Ct. 2525, and footnote 15. Our cases had expressed it as a counterpart to the right to counsel. *Arnold v. United States* (9 Cir. 1969), 414 F.2d 1056, 1058, *cert. denied,* 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). We therefore could have stated that in cases arising before *Faretta* we would not be bound to follow our prior decisions and therefore not required to afford state defendants the benefit of the right to counsel.

3. *Showing of prejudice could be required.*

The Supreme Court vacated the judgment in *Faretta* without considering possible prejudice to the defendant. 422 U.S. at 836, 95 S.Ct. 2525. Indeed, it noted that in most cases the defendant's right would suffer if he or she asserted the right to self-representation. 422 U.S. at 834, 95 S.Ct. 2525. Very few defendants would be able to satisfactorily show that they suffered prejudice from the assistance of unwanted counsel. In fact, I think we can take judicial notice from records we have seen that defendants exercising their right of self-representation uniformly have less success than those for whom counsel had been appointed. We could also, since we are framing a rule for our circuit, provide that our decision was only applicable to defendants whose cases had originated before *Faretta.*

Thus, in cases coming after *Faretta,* there would be no requirement to show prejudice. Such a requirement would probably make it almost impossible in most cases for a defendant to secure his right to counsel guaranteed by *Faretta.* The majority in *Bittaker* conclude as to this problem that "The purpose of the right [self-representation] is to protect the defendant's personal autonomy, not to promote the convenience or efficiency of the trial." *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540. This result may be well enough for cases arising after *Faretta* ; it certainly is not compelled as to the cases arising before *Faretta.*

4. *Footnote 2.*

The panel in *Bittaker, supra,* has inserted footnote 2 as follows:

"The state mentions several times that one of its prisoners who may benefit from the *Faretta* decision is Charles Manson. We do not encourage this type of advocacy. A federal court must make its decisions in accord with the Constitution and the laws, without regard to the notoriety of parties or nonparties."

This is an odd way to avoid a serious problem.

For the benefit of those people not familiar with the case of *People v. Charles Manson,* 61 Cal.App.3d 102, 132 Cal.Rptr. 265 (1976), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1686, 52 L.Ed.2d 382 (1977), let me state

briefly the background of the reference to him in the footnote.

Manson was convicted for multiple murders committed on two successive days in August 1969. The case in the trial court required many months of trial, and it was seven years later that the decision on appeal came down affirming his conviction. Manson had claimed the right of self-representation, had been overruled, and counsel had been appointed for him and represented him throughout the trial. *Manson, supra*, p. 172.

The footnote may be correct in that we should not tailor any one of our decisions for its possible effect on some particular person in the state or federal court. However, we clearly have the right to consider what the effect of our decision will be on the general administration of justice, both in our court and in the state courts. E. g., in solving the retroactivity problem, the effect of the decision on the administration of justice is a pertinent inquiry. *Halliday v. United States*, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

A great number of retrials will be required in the state courts because of the effect of *Bittaker* and this case. This is certainly a factor which we could legitimately consider.

5. *Our cases permitted a different result.*

Finally, we could have held that there was sufficient lack of uniformity in our prior Ninth Circuit decisions regarding the right to counsel so that we were free to say in a retroactive posture that our prior decisions did not compel the result in *Bittaker* and this case.

This is what I attempted to do in my proposed opinion in this case.

Unfortunately, the panel in *Bittaker* would not consider the retroactivity of *Faretta*. If *Faretta* was declared to have only a prospective operation, then the horribles listed above would not occur.

In fact, in the Eighth Circuit, *Martin v. Wyrick*, 568 F.2d 583 (1978), cites the cases

and holds *Faretta* not retroactive, as does the California Supreme Court in *People v. McDaniel, supra.*

The panel in *Bittaker* did not reach the retroactivity question because it is of the view that prior cases in the Ninth Circuit had in substance held that the defendant had a constitutional right to represent himself in state court proceedings before the Supreme Court so held in *Faretta.*

In our case, the majority quotes from *Bittaker*:

> [T]he law of this circuit at the time of [defendant's] state court trial [1974] had already been established in a fashion consistent with the Supreme Court's statement of the law in *Faretta*. *Arnold v. United States*, 414 F.2d 1056, 1058 (9th Cir. 1969), *cert. denied*, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970); *Bayless v. United States*, 381 F.2d 67, 71 (9th Cir. 1967). This circuit had stated in federal cases that self-representation was a corollary of the Sixth Amendment right to counsel. Because the defendant could waive his Sixth Amendment right, we said he could also insist on self-representation as a constitutional, as well as a statutory, right. Until now, we have had no occasion to apply the federal constitutional right to state habeas petitioners.
>
> . . .
>
> There can be little doubt, however, that, if squarely faced with the issue, we would have applied the right to self-representation to a state habeas petitioner. (at p. 5).

Despite the apparent breadth of some of the language in our decisions, I think the right to self-representation in this circuit prior to *Faretta* had not been extended to defendants in state criminal proceedings.

On numerous occasions prior to *Faretta* this circuit held—with respect to *federal* criminal trials—that there is a constitutional right to self-representation. *See, e. g., Bayless v. United States*, 381 F.2d 67, 71 (9 Cir. 1967) ("A defendant has such a right [to represent oneself] and it is not only a statutory right but a constitutional right."); *Arnold v. United States*, 414 F.2d 1056, 1058

(9 Cir. 1969), *cert. denied,* 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970) ("A court has no more right to force an attorney on a defendant than it has to ignore the Sixth Amendment right to counsel."); *Hodge v. United States,* 414 F.2d 1040, 1042 (9 Cir. 1969); *Haslam v. United States,* 431 F.2d 362, 365 (9 Cir. 1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971) ("The constitutional right to assistance of counsel includes the correlative right to dispense with counsel and proceed *in propria persona.*"); *United States v. Pike,* 439 F.2d 695 (9 Cir. 1971) (" 'The right to act pro se * * * is a right arising out of the Federal Constitution and not the mere product of legislation or judicial decision.' ", quoting *United States v. Plattner,* 330 F.2d 271, 273 (2 Cir. 1964).); *United States v. Price,* 474 F.2d 1223, 1226 (9 Cir. 1973) (". . . it is now clear that the right to proceed *pro se* is not merely statutory, it is a right of constitutional dimension."). Notably, none of these holdings affirmatively extended the right to self-representation to state court proceedings.

In *Meeks v. Craven,* 482 F.2d 465 (9 Cir. 1973), the Ninth Circuit had the opportunity to determine whether the standard previously applied only in federal proceedings was also applicable in state proceedings, but declined. *Meeks* involved a petitioner in custody of California who filed a 28 U.S.C. § 2254 habeas corpus petition in federal court, alleging a denial of his right to self-representation. The Ninth Circuit noted the challenge to California's standard, but stated:

> "We do not reach this question, for we hold that Meeks did not make an 'unequivocal' demand to represent himself." Id. 482 F.2d at 467.

Nevertheless, *Meeks* contained a seed of a restriction of the scope of the language establishing the right to self-representation in this circuit. In a concurring opinion in *Meeks,* Judge Trask recognized the holdings in this circuit establishing a constitutional right to self-representation, but questioned their breadth. He suggested that the absolute character of the language of prior cases was justified neither by Supreme Court precedent nor by the facts of the cases themselves. Although Judge Trask seemed to feel constrained to recognize some kind of right to waive counsel, he did not feel our circuit's cases should be construed to extend that right beyond the boundaries established by existing Supreme Court precedent.

This seed of restraint found fertile soil in *United States v. Dujanovic,* 486 F.2d 182 (9 Cir. 1973), decided less than one year before Walker's trial. On its facts, *Dujanovic* involved the contention by a defendant that his waiver of counsel was not competently, intelligently and voluntarily made. However, the court took this occasion to review the nature of the right to self-representation in the Ninth Circuit, making two important points:

—(1) the right to self-representation as developed at that time in the Ninth Circuit flowed from "the two founts" of *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942) and *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The court explained the thesis of these two cases to be "that the constitutional right of counsel . . . may be waived by an accused, through an intelligent relinquishment or abandonment thereof, and only then may the *correlative* constitutional right of self-representation be asserted and brought into play." *United States v. Dujanovic,* 486 F.2d at 185.

—(2) whatever the nature of the language of prior opinions in this circuit discussing the right, the decisions have progressed from "case to case" to meet "the exigencies of the given case." The composite rule was restated in open-ended terms to be: "An accused has the limited constitutional right upon demand to competently and intelligently waive his constitutional right to assistance of competent counsel and assume the management and control of his defense or participate therein under controlled circumstances as determined by the trial court." *United States v. Dujanovic,* 486 F.2d at 186.

*Dujanovic* did not explicitly discuss the applicability of the right to self-representation in state criminal proceedings. But the strong implication from the opinion is that the right of self-representation in the Ninth Circuit should not be—and had not been—extended beyond the thesis of the Supreme Court decisions in *Adams* and *Johnson, supra.* Neither *Adams, Johnson,* nor any other Supreme Court precedent prior to *Faretta* had extended to defendants in state criminal trials the right to self-representation. *Faretta* itself makes this point. *Faretta v. California,* 422 U.S. at 814–15, 95 S.Ct. 2525. I conclude that despite the apparent breadth of the language of some of our decisions, the right to self-representation in this circuit, prior to *Faretta,* had not been extended to defendants in state criminal proceedings. *Accord Houston v. Nelson,* 404 F.Supp. 1108 at 1115.